IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JAN 31   AM 8: 21

CLERK _____
SO. DIST. OF GA.

DEXTER PALMER,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )    CV 604-075
                                        )
NEAL OLIVER, et al.,                    )
                                        )
          Defendants.                   )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*Pro se* Plaintiff, an inmate at Georgia State Prison, in Reidsville, Georgia, brought the captioned case pursuant to 42 U.S.C. § 1983. The matter is now before the Court on Defendants' motion for summary judgment. (Doc. no. 52). Plaintiff opposes the motion. (Doc. no. 56). For the reasons explained herein, the Court **REPORTS** and **RECOMMENDS** that the motion be **GRANTED IN PART** and **DENIED IN PART** and that a **FINAL JUDGMENT** in this case be entered in favor of Defendant Dr. Jones only. Plaintiff's claims against the remaining Defendants should go forward.

### I. STATEMENT OF FACTS

**A.    Plaintiff's Verified Complaint[1]**

As the Court has already summarized Plaintiff's contentions at length (see doc. nos. 14, 48, 61), it sees no need to do so again. It suffices to say that Plaintiff avers that on

---

[1]Plaintiff's complaint is sworn and describes facts based upon personal knowledge. As the verified complaint meets the requirements of 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(e), it is sufficient to create an issue of material fact in response to Defendants' motion. See U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1444 (11th Cir. 1991).

December 29, 2003, Defendant Crawford opened his cell door so that several Defendants could beat him mercilessly and repeatedly over a period of several hours, while Plaintiff was handcuffed and helpless. (Doc. no. 51, pp. 7-14). Still other Defendants did nothing to prevent or stop these beatings. (Id.). Following the alleged brutal beatings, other Defendants failed or refused to provide Plaintiff with medical treatment for his injuries. (Id. at 14-17). Finally, on January 2, 2004, Plaintiff began to receive some medical care. (Id. at 17). A few days later, X-rays were taken and it was learned that Plaintiff suffered from a broken ankle and jaw. (Id. at 18). Several months later, it became apparent that Plaintiff had also suffered other injuries to his legs and shoulders. (Id.).

According to Plaintiff, the events of December 29th and its aftermath constituted excessive force, failure to intervene, and deliberate indifference to serious medical needs, all in violation of the Eighth Amendment. Liberally construing Plaintiff's allegations, the Court sanctioned excessive force claims against Defendants Waynick, Saul, Officer Mobley, Strong, Fields, Moment, Bell, Simmons, Johnson, Austin, and Oliver. (See doc. no. 14, p. 5 (citing Hudson v. McMillian, 503 U.S. 1, 8-10 (1992)). The Court also determined that Plaintiff had stated viable claims for failure to intervene against Defendants J. Smith, King, Moye, Dupree, and Blackmon. (Id. (citing Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1995)); see also doc. nos. 48, 61). Finally, the Court determined that Plaintiff had stated viable claims for deliberate indifference to a serious medical need against Defendants Brown, Nurse Lanier, Sanders, Dr. Jones, and Nurse Underwood. (Id. (citing Farmer v. Brennan, 511 U.S. 825, 835-39 (1994); see also doc. nos. 48, 61).

**B.    Defendants' Contentions**

Of course, Defendants hotly contest Plaintiff's accusations regarding the December

2

29th incident and its aftermath. According to Defendants, a struggle between Plaintiff and a number of Defendants began when Plaintiff assaulted Defendant Waynick. Defs.' Ex. A, p. 1 (attached to doc. no. 53). At the time, Defendants Waynick and Sauls were conducting a "yard call" in Plaintiff's dormitory at approximately 12:15 p.m. Id. Defendant Waynick asked Defendant Crawford, the "cage officer," to open "cell # 9," but she instead opened "cell # 5," Plaintiff's cell. Id. at 1, 7, 9. Plaintiff then allegedly charged Defendant Waynick, struck him in the face, and took his baton. Id. at 1, 6, 7, 8, 15. Several other corrections officers, including Defendants such as Sauls, Fields, and Strong, quickly arrived to help subdue Plaintiff, but no unnecessary force was used. Id. at 7-10, 15, 23. According to Defendant Waynick, the altercation left Defendant Waynick with a laceration on his scalp that required medical attention. Id. at 1,2, 4.

Following the use of force incident, Defendants Brown, Austin, and Bell escorted Plaintiff, who was now handcuffed, to "medical" so that he could be "checked." Id. at 18. At this time, Plaintiff resisted and attempted to kick Defendant Simmons. Id. at 18, 19. In fact, because of Plaintiff's uncooperativeness and threats to medical staff, Defendant Brown ordered him removed from the "E.R." so that he could be "checked later in the day after his behavior improved." Id. at 14. Nevertheless, prison records indicate that a use of force examination was performed at 12:39 p.m by Defendant Nurse Lanier. Id. at 5; see also Defs.'s Ex. B, p. 2. Plaintiff was uncooperative during the exam, but the only injuries discovered were abrasions to his knees and the back of his head. Defs.' Ex. A, pp. 5, 11. Plaintiff was taken back to medical for further evaluation at 9:39 p.m, when he was seen by Defendant Nurse Underwood. Id. at 24. Thus, Defendants contest Plaintiff's allegations that he was denied medical care and that he sustained serious injuries.

That said, Defendants also submit treatment notes showing that Defendant Nurse Underwood performed the aforementioned nursing assessment on December 29, 2003, at 9:39 p.m. See Defs.'s Ex. B (attached to doc. no. 53). Defendant Nurse Underwood treated abrasions to Plaintiff's left foot and left knee, and noted that Plaintiff would not allow her to move or bend his left foot. Id. Defendant Underwood did not refer Plaintiff for additional treatment. Id. Nevertheless, Defendants also submit treatment notes showing Defendant Dr. Jones treated Plaintiff in January 2004.

Plaintiff saw Defendant Dr. Jones on January 2, 2004, reporting pain in his head, neck, ankles, and left knee. Id. at 4. Dr. Jones ordered X-rays of Plaintiff's skull, spine, left knee, and ankles. Id. On January 6, 2004, Defendant Dr. Jones saw Plaintiff again. Id. at 5. By this time, Plaintiff was "unable to stand." Id. Plaintiff's complaints otherwise remained similar. Defendant Dr. Jones then placed an "urgent" order for X-rays for Plaintiff's face and left hip. Id. By the time Plaintiff saw Dr. Jones again on January 8, 2004, the X-rays had been performed and revealed a fracture of the left mandible, as well as the left malleolus. Id. at 6. Dr. Jones referred Plaintiff for oral surgery at Augusta State Medical Prison. Id. The notes from the January 8th visit also bear a March 3, 2004, notation that a cast was applied to Plaintiff's left ankle. Id. On January 9, 2004, Defendant Dr. Jones put Plaintiff on a soft diet. Id. at 7.

Defendants submit no further no further medical records or evidence regarding Plaintiff's injuries, but deny the balance of Plaintiff's allegations.

**C.     Plaintiff's Response**

In response, Plaintiff avers that his medical records demonstrate the existence of material issues of fact regarding the extent of his injuries. (See doc. nos. 56 & 57).

4

Specifically, Plaintiff avers that the beatings caused him to suffer a broken jaw, a broken ankle, loss of hearing in one ear, and other "psychological and physical damages." (Doc. no. 56, p. 3). In support of these allegations, Plaintiff has submitted several medical records, including: 1) a January 8, 2004 radiology report indicating "evidence of a fracture through the left medical malleolus," the age of which was "uncertain," but without any "associated soft tissue swelling," (id. at 39); 2) a June 22, 2004 orthopaedic consultation regarding an MRI of Plaintiff's left knee (id. at 40); 3) a May 12, 2004 audiology consultation report regarding Plaintiff's need for a hearing aid (id. at 43); 4) a January 6, 2004 "medical encounter form" recommending that X-rays of Plaintiff's face be taken (id. at 48); 5) a January 2, 2004 "medical encounter form" recommending that Plaintiff's skull, spine, left knee, and ankles be X-rayed (id. at 50); 6) a January 8, 2004 oral surgery consultation report recommending that Plaintiff receive surgery to repair a fracture to his left mandible (id. at 55); 7) an April 15, 2004, doctor's note referring to the removal of a cast on Plaintiff's ankle (id. at 66); and 8) a November 5, 2004 orthopaedic consultation report indicating that an MRI revealed that Plaintiff did not have a torn ligament in his left knee (id. at 69-70).

Plaintiff also provides that following the December 29th incident, he was given a "false" disciplinary report for causing injury to a corrections officer and failing to follow instructions. (See id. at 111-18). As Plaintiff points out, the administrative record regarding the disciplinary report demonstrates that, on appeal, the sanction for injuring a corrections officer was expunged because it was not supported by sufficient evidence. (See id.).

Having summarized the parties' contentions, the Court turns to the merits of Defendants' motion.

## II.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[2] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. See Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. See Clark, 929 F.2d at 608.  Evidence presented by the movant is viewed in the light most favorable to the non-moving party. See

---

[2]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important.  That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Merits of Defendants' Motion**

In support of their motion for summary judgment, Defendants argue: 1) the force used against Plaintiff was reasonable and necessary (doc. no. 53, pp. 4-7); 2) Plaintiff suffered only "minimal" injury (id. at 7); 3) Plaintiff did not have a serious medical need following the December 29th incident (id. at 8-9); 4) Plaintiff has not shown that any delay in his treatment caused him to suffer any adverse effects (id. at 9); and 5) Defendants are entitled to qualified immunity. (Id. at 10-11). The Court will address the merits of Defendants' contentions with regard to Plaintiff's claims for: 1) excessive force, 2) failure to intervene, and 3) deliberate indifference to serious medical needs.

**1.     Excessive Force**

As to Plaintiff's claims regarding the alleged use of excessive force, it is clear that genuine issues of material fact preclude the entry of summary judgment in favor of

7

Defendants Waynick, Saul, Officer Mobley, Strong, Fields, Moment, Bell, Simmons, Johnson, Austin, and Oliver. "The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on his excessive use of force claims, Plaintiff must satisfy both an objective and subjective component. See Farmer, 511 U.S. at 834. Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation that was harmful enough to establish a constitutional violation. Id. Although there is no requirement that a plaintiff suffer significant injury, "'de minimis' uses of physical force" are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind."[3]    Hudson, 503 U.S. at 9-10; see also Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997) ("An injury need not be severe or permanent to be actionable . . . but it must be more than de minimis."). The Supreme Court has explained that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (citation omitted)).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is, "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: 'The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force

---

[3]Notably, however, the absence of injury alone is not a sufficient basis upon which to dismiss an Eighth Amendment claim. Hudson, 503 U.S. at 4-7.

authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'" Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7). Moreover, the use of restraints is permitted to control inmates who are causing a disturbance, attempting to incite other prisoners, or who represent a danger to themselves or others. Williams v. Burton, 943 F.2d 1572, 1575-76 (11th Cir. 1991) (*per curiam*).

The analysis of the subjective component of an Eighth Amendment excessive force claim is contextual and requires consideration of many factors: (1) the extent of injury, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 321). Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.[4] Hudson, 503 U.S. at 6.

Despite this deference to allow the application of preventative measures intended to reduce the incidences of breaches of prison discipline, an Eighth Amendment violation occurs when the force used was not necessary to maintain order or discipline. Skrtich v. Thornton, 280 F.3d 1295, 1301-02 (11th Cir. 2002). The Eleventh Circuit has also ruled that the continued use of harmful force once the necessity for the use of force ceases, as well as

---

[4]For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987).

any physical abuse directed at a prisoner after he ceases his resistance to authority, may be an Eighth Amendment violation. Williams, 943 F.2d at 1576. Moreover, the Eleventh Circuit has ruled that the use of force on an incapacitated inmate is an Eighth Amendment violation. Skrtich, 280 F.3d at 1302.

Here, the parties dispute nearly all the essential facts of the case. To illustrate, the parties dispute: 1) the need for the use of *any* force, 2) Defendants' intent in using force, 3) the amount of force used, 4) the duration of the use of force, 5) the existence of *any* risk to staff safety, and 6) the extent of the resulting injury to Plaintiff. Plaintiff avers that corrections officers deliberately opened his cell for the single purpose of beating him--while handcuffed--repeatedly over a prolonged period, causing serious injury. In contrast, Defendants aver that Plaintiff started the affair by threatening Defendant Waynick's safety and causing a dangerous situation that required swift intervention. Defendants also deny that Plaintiff suffered any serious injury.

On this point, the Court notes that both Plaintiff's *and* Defendants' evidence supports Plaintiff's assertion that his jaw, and perhaps his ankle, were broken during the altercation. Yet, Defendants maintain that the entire incident only caused Plaintiff to suffer *de miminis* injuries such as abrasions to his knees and head. (Doc. no. 53, pp. 6-7). The Court reminds the parties that, at this stage of the proceedings, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59).

To prevail on their motion for summary judgment, Defendants must negate an essential element of Plaintiff's claims against them or else point to specific portions of the record that demonstrate Plaintiff's inability to meet his burden of proof at trial. They have

10

failed to do so. See, e.g., Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1331-33 (11th Cir. 1988) (finding summary judgment to be inappropriate where factual disputes exist as to whether type and amount of force used by police officer was reasonable under circumstances presented). It is obvious that key questions remained unanswered by the record presently before the Court. Based on the record, it is impossible to determine conclusively: 1) whether the use of force was necessary or instigated solely to cause harm, 2) whether Defendants continued to apply force after it was no longer necessary, or 3) the scope of the injuries Plaintiff actually suffered during the course of the use-of-force incident. The Court cannot grant summary judgment on such a fragmented record. In sum, it is simply unclear whether Defendants could or should have made different decisions about using force against Plaintiff.[5]

### 2.    Failure to Intervene

Nor would it be appropriate to grant summary judgment on Plaintiff's claims for failure to intervene against Defendants J. Smith, King, Moye, Dupree, and Blackmon. In order to prevail on his claims for failure to intervene, Plaintiff must show that these Defendants were deliberately indifferent to his safety--that is to say, they were subjectively aware of a substantial risk to his safety and failed to take available action to protect him. Farmer, 511 U.S. at 828-45. Again, at this stage in the litigation,"[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59), and to prevail on summary

---

[5]Of course, if the use of excessive force is established, "there is no room for qualified immunity." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). As the issue of whether excessive force has in fact been used cannot be determined at present, the Court likewise cannot reach Defendants' qualified immunity argument on this ground.

judgment, Defendants must negate an essential element of Plaintiff's claims against them or else point to specific portions of the record that demonstrate the Plaintiff's inability to meet his burden of proof at trial.

Here, it is impossible to determine whether any Defendant should have intervened without having some sense of the merits of the underlying excessive force claim. "[I]f [an] officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under § 1983." Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)(internal citation and quotation omitted)(Fourth Amendment case); see also Skrtich, 280 F.3d at 1300-01 (Eighth Amendment case). As the Court has been unable to determine whether an unprovoked beating has in fact occurred, it also cannot assess the extent to which any duty to intervene existed.

In addition, the duty to intervene depends upon whether a defendant is in a "position to intervene." Id. at 1407. Whether these Defendants were actually in such a position is not clear from the record. Simply put, it is not clear from the record whether these Defendants could or should have made different decisions and whether their inaction constituted a violation of Plaintiff's Eighth Amendment rights. Plaintiff maintains that he was the victim of a prolonged and savage beating while these Defendants watched and did nothing; on the other hand, Defendants contend that Plaintiff threatened the safety of another corrections officer, and that emergency actions were taken by other officers to secure Plaintiff, restore discipline, and rescue their colleague. Given such a profound dispute regarding the key facts, the Court cannot grant summary judgment to Defendants J. Smith, King, Moye, Dupree, or Blackmon at this time.

12

3.     **Deliberate Indifference to Serious Medical Needs**

Finally, the Court also cannot grant Defendants Brown, Nurse Lanier, Sanders, and Nurse Underwood summary judgment on Plaintiff's deliberate indifference claims. However, the Court does find it appropriate to grant Defendant Dr. Jones summary judgment. Before explaining the Court's reasoning, it will be helpful to recap Plaintiff's claims on this score.

Plaintiff avers that, upon his first trip to medical on December 29th, Defendant Brown ordered Defendant Nurse Lanier not to treat Plaintiff, thus delaying Plaintiff's access to medical care--a claim Defendant Brown does not entirely dispute. (Doc. no. 51, p. 10). Simply put, Plaintiff avers that his first trip to medical was so cursory that he never actually received any treatment or examination at that time. (Id. at 15). Still later, Defendant Sanders later returned Plaintiff to his cell, without ensuring that he received any medical care---despite Plaintiff's inability to walk. (Id. at 13). Then, on his second trip to medical, Defendant Nurse Underwood treated Plaintiff's abrasions, but ignored his other injuries--including an obviously broken ankle--and failed to refer him to a doctor. (Id. at 15-16). Finally, Plaintiff maintains that Defendant Dr. Jones, who treated Plaintiff in January 2004, delayed in getting X-rays, putting Plaintiff's ankle in a cast, and taking other treatment measures until January 9, 2004, when he should not have. (Id. at 17-19). Plaintiff also complains that Defendant Dr. Jones did not recommend an MRI for his knee until June 2004, when his knee should have been thoroughly examined much earlier. (Id.).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotation omitted). Of course, "[m]edical

treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991) (internal quotation omitted). Likewise, the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

Of particular interest here, as Defendants note, "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002). "Whether [a] delay in treatment was tolerable depends on the nature of the medical need and the reason for the delay." Farrow v. West, 320 F.3d 1235, 1247 (11th Cir.2003) (internal quotation omitted). More generally, just as with his other Eighth Amendment claims, "[t]o show that [Defendants] acted with deliberate indifference to serious medical needs, . . . [P]laintiff must satisfy both an objective and a subjective inquiry." Id. at 1243. First, Plaintiff must show "an objectively serious medical need." Id. Second, he must also "prove that [Defendants] acted with an attitude of deliberate indifference to that serious medical need." Id.

Here, Plaintiff's principal averment is that, despite swelling to his face and ankle, his broken jaw and ankle were not diagnosed or treated at all until January 2, 2004, four days after the alleged altercation. (Doc. no. 56, p. 18). Furthermore, no X-rays or other actions were actually taken until January 8, 2004, while Plaintiff was left "to suffer through the pain"

14

during the interim. (Id. at 19). According to Plaintiff, throughout this time he was unable to stand and was confined to a wheelchair, yet Defendants still failed to provide him with any medical care. (Id. at 20). According to Plaintiff, this delay was cruel and gave rise to a constitutionally cognizable injury. (Id. at 21 (citing Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990)).

Taken as true, these allegations support a deliberate indifference claim--provided that the alleged delay in treating Plaintiff was deliberate and made for non-medical reasons. "A deliberate delay on the order of hours in providing care for a serious and painful injury," like a broken ankle or a broken jaw, gives rise to a constitutionally cognizable injury. Brown, 894 F.2d at 1538 (citing Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11th Cir. 1985)(over two hour delay in treating bleeding cut under eye) & Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961)(13 hours delay in treating broken vertebrae)). In Brown, the Eleventh Circuit held that a delay of several hours in treating a broken foot could constitute deliberate indifference to serious medical needs. Brown, 894 F.2d at 1538; see also Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989)(leg injury which rendered the prisoner virtually unable to walk was a serious medical need.). Accordingly, the Court rejects Defendants' argument that Plaintiff has offered no proof that he had a serious medical need.

The Court is aware that (as discussed *supra*) in support of their assertion that Plaintiff suffered only *de minimis* injuries, Defendants have submitted a use-of-force examination report dated December 29, 2003, which avers that Plaintiff only suffered small abrasions to his head and knees. Defs.'s Ex. A, pp. 5-6; Defs.' Ex. B, p. 1. However, the rest of the evidence belies this contention. Defendants have made not any attempt to explain Plaintiff's broken jaw or ankle--an inexplicable omission given Plaintiff's allegations. Having

15

established the likely existence of a serious medical need, the Court turns to the subjective prong of the deliberate indifference inquiry.

Plaintiff avers that his broken ankle and jaw were obvious injuries which Defendants Sanders, Brown, Nurse Lanier, and Nurse Underwood deliberately ignored, forcing Plaintiff to endure pain until he was finally seen by Defendant Dr. Jones on January 2, 2004. In reply, Defendant aver that Plaintiff has failed to place "verifying medical evidence" into the record showing that this delay had a lasting, detrimental effect on his health. (Doc. no. 53, pp. 9-10). Here, Defendants misconstrue the Eleventh Circuit's holding in Hill. By placing evidence in the record to support his claims of painful injury, Plaintiff has made a sufficient showing to avoid summary judgment.

The Eleventh Circuit has explained that a prisoner plaintiff need not show that the delay in treatment caused a permanent loss or handicap when his claims involve the infliction of unnecessary pain through deliberate delay in treatment, as opposed to a claim that the inmate needed--and was denied--"immediate or emergency attention."[6] See Farrow, 320 F.3d at 1245. To put the matter plainly, at issue here is whether the delay amounted to the unnecessary and wanton infliction of pain. Based on the record before the Court, the Court cannot grant summary judgment to Defendants Sanders, Brown, Nurse Lanier, and Nurse Underwood when it is unclear how or why they made their decisions regarding Plaintiff's

---

[6] The Court is aware that Plaintiff maintains that Defendants should have taken him to "the nearest hospital," suggesting that Plaintiff needed immediate, emergency care. (Doc. no. 56, p. 19). However, he also asserts that Defendants deliberately denied him medical care between December 29th and January 2nd solely to make him "suffer through the pain," a claim Defendants have not conclusively refuted. (Id.).

treatment.[7] On this point, it is key to recognize that it is unclear whether Plaintiff's injuries should have been obvious to these Defendants and prompted them to provide Plaintiff with medical care before Plaintiff saw Defendant Dr. Jones on January 2, 2004. Notably, Defendants have not a filed a single affidavit from any of these Defendants, nor offered to explain why many of Plaintiff's injuries were apparently not treated until January 2nd.

That said, Plaintiff's claims against Defendant Dr. Jones are a different matter. By all accounts, once Defendant Dr. Jones was alerted to Plaintiff's condition on January 2, 2004, he treated Plaintiff frequently thereafter. Defendant Dr. Jones's treatment notes show that on Friday, January 2nd, he ordered X-rays and prescribed various medications, including Motrin.[8] Defs.' Ex. B, p. 4. On January 6th, Defendant Dr. Jones placed an "urgent" order for X-rays, and prescribed additional medications. Id. at 5. On January 8th, Defendant Dr. Jones studied Plaintiff's X-rays, applied a cast to Plaintiff's ankle, and referred him for oral surgery. Id. at 6. On January 9th, Defendant Dr. Jones saw Plaintiff again and put him on

---

[7]The Court also rejects the argument that Defendants Brown, Nurse Lanier, Sanders, and Nurse Underwood are entitled to qualified immunity. Defendants argue: 1) Plaintiff has not shown the violation of a constitutional right, and 2) any right which Defendants allegedly violated was not "clearly established." (See doc. no. 53, pp. 10-11). The Court has already rejected the first argument, as explained herein. As to the second argument, the deliberate failure to treat an inmate's pain is a violation of clearly established law. See, e.g., McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999). It is also a clear constitutional violation when prison medical officials render care which is so cursory as to amount to no care at all. See id.

Qualified immunity is nothing more than a guarantee that a defendant will have fair warning that his conduct is unconstitutional. Id. at 1260. Accepting Plaintiff's evidence (and every justifiable inference therefrom) as true, any reasonable official in Defendants' shoes would have recognized that a deliberate delay of some days in treating Plaintiff's obvious, painful injuries would constitute a constitutional violation. Id. at 1260-61. As the Eleventh Circuit has explained, "[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." Hill, 40 F.3d at 1186.

[8]Defendant Dr. Jones's handwriting is nearly illegible, and the Court cannot discern the names of all the prescribed medications.

17

a soft diet. Id. at 7. In sum, all indications are that, starting on January 2nd, Defendant Dr.

Jones saw Plaintiff on a regular basis, and that Plaintiff continued to receive medical care

from Defendant Dr. Jones and other medical professionals in the months after the use-of-

force incident.

Although Plaintiff's allegations may support a charge of negligence or malpractice

against Defendant Dr. Jones, they do not establish deliberate indifference to medical needs.

As the Supreme Court has explained:

> [A] complaint that a physician has been negligent in diagnosing or treating a
> medical condition does not state a valid claim of medical mistreatment under
> the Eighth Amendment. Medical malpractice does not become a constitutional
> violation merely because the victim is a prisoner. In order to state a cognizable
> claim, a prisoner must allege acts or omissions sufficiently harmful to evidence
> deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 105-06. In addition, as noted *supra,* the burden of proving deliberate

indifference cannot be met simply by arguing that an inmate wanted a different type of

treatment. Hamm, 774 F.2d at 1575 ("Where a prisoner has received . . . medical attention and

the dispute is over the adequacy of treatment, federal courts are generally reluctant to second

guess medical judgments. . . . Id. (citation omitted)).

The Court underscores here that "not every claim by a prisoner that he has not received

adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at

1243 (internal quotation and citation omitted). Furthermore, the Eighth Amendment does not

mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even

very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D.

Ga. 1980)(Bowen, J.)). Here, although Plaintiff disputes the quality of Defendant Dr. Jones's

care, it is clear that he was receiving frequent and regular care from Defendant Dr. Jones. As

a result, Plaintiff has failed to support his Eighth Amendment claims against this Defendant.

In the absence of any evidentiary support for Plaintiff's claim that Defendant Dr. Jones was *deliberately indifferent* to Plaintiff's care, Plaintiff's accusation rings hollow.

Accordingly, the Court determines that Defendant Dr. Jones is entitled to summary judgment.

### III.  CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment (doc. no. 51) be **GRANTED IN PART** and **DENIED IN PART** and that a **FINAL JUDGMENT** in this case be entered in favor of Defendant Dr. Jones only.  Plaintiff's claims against the remaining Defendants should go forward.

SO REPORTED and RECOMMENDED this 3/st day of *January*, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

19